# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOSEPH CRUSSIAH,

     Plaintiff,

     v.

INOVA HEALTH SYSTEM,

     Defendant.

Civil Action No. TDC-14-4017

## MEMORANDUM OPINION

Plaintiff Joseph Crussiah, who is self-represented, alleges several state common law claims against Defendant Inova Health System ("Inova"). Pending before the Court is Inova's Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART. This opinion also addresses Crussiah's Motion for Sanctions, Crussiah's Motion to Compel, and MedStar Family Choice, Inc.'s Motion to Intervene. All three are DENIED.

## BACKGROUND

The following facts are presented in the light most favorable to Crussiah, the nonmoving party:

## I.    Crussiah's Medical Treatment

Starting in 2013, Crussiah, a Maryland resident, received medical treatment for an unspecified condition from Inova Alfa Neurology, a Virginia-based practice group affiliated with Inova and led by Dr. John Cochran. In early 2013, Crussiah's treating physician, Dr. Sonalee

Kulkarni, ordered a magnetic resonance imaging procedure ("MRI") for Crussiah. Crussiah received the MRI at Capital Imaging, LLC in Bethesda, Maryland on February 15, 2013. The technician administering the MRI injected Crussiah with an unusually large volume of gadolinium (a substance that helps create a clearer image in MRIs), cutting off oxygen to Crussiah's brain and causing him to lose consciousness for 60 minutes.

It is not clear when Crussiah became aware that something had gone wrong with the MRI, but he apparently had only suspicions as of March 26, 2013, his next appointment with Kulkarni. Crussiah informed Kulkarni of unusual statements made by the MRI technician after the MRI and of new symptoms he was experiencing. Kulkarni realized what had occurred during the MRI but concealed that information from Crussiah. Instead, she deleted the order for the MRI and began treating Crussiah for migraines that he did not have. Crussiah complained to Inova Alfa Neurology about Kulkarni's treatment. In late 2013, Inova Alfa Neurology sent Crussiah a letter terminating their relationship.

On December 17, 2013, Crussiah went to Inova Alfa Neurology's office in Virginia to obtain his medical records. The receptionist who retrieved his records "noticed a large defamatory statement on the first page of the medical records." Am. Compl. ¶ 84, ECF No. 6-2. She read the first part of this statement out loud: "This patient has been dismissed from the practice because—" and read the rest silently, in visible astonishment. *Id.* The receptionist then left to get a supervisor. Twenty minutes later, the practice administrator, accompanied by three Fairfax County police officers, gave Crussiah his medical records. Crussiah reviewed the records in the office and noted that some page numbers were whited out. He demanded another copy of his records, and one was printed for him. When Crussiah asked the practice administrator why the police officers were at the office, she indicated that they had been called

on another matter.  After Crussiah received and reviewed the second copy of his records, he asked a police officer if he could leave and was told that he could.

After his relationship with Inova was terminated, Crussiah received care from four physicians in Maryland:  Aroor Rao, Jeffrey Dormu, Anjana Dhar, and Luc Oke.  He was referred to Dhar and Oke by his insurance provider, MedStar Family Choice, Inc. ("MedStar").  Crussiah's interactions with these doctors led him to conclude that Inova had contacted them in an effort to prevent them from disclosing Inova's malpractice regarding the botched MRI.  For instance, Rao and Dormu inaccurately reported results from Crussiah's physical examinations.  Dormu also refused to turn over some of Crussiah's medical records.  Dhar learned that Crussiah had an aortic aneurysm, but she did not include this information in his medical records, putting Crussiah at great risk.  Oke similarly included a false diagnosis in Crussiah's medical records and concealed certain results from a Treadmill Stress Test.

Crussiah also discerns Inova's influence in his interactions with Horizon Vascular, a medical practice with offices in Maryland, and with his pastor.  Crussiah called Horizon Vascular to make an appointment, but the call ended abruptly after Crussiah gave his name.  He was never called back.  Crussiah then asked his pastor to recommend a cardiologist, but his pastor only admonished him to pray for healing.  Crussiah claims that Inova must have contacted Horizon Vascular and his pastor and convinced them to thwart his search for medical care.

## II.    Procedural History

Crussiah filed the Complaint in this action on December 24, 2014.  He submitted a 13-count Amended Complaint on February 24, 2015.  He alleges fraud, defamation, false imprisonment, malicious prosecution, tortious interference with contract and business

expectancy,[1] civil conspiracy, and intentional infliction of emotional distress. Crussiah seeks compensatory and punitive damages, appointment of counsel, a jury trial, and an order directing Inova to release his complete medical records, to fix inaccuracies and omissions in his medical records, and to identify funding sources for a "death panel" Inova allegedly convened to harm him.

On April 7, 2015, Inova filed the pending Motion, requesting that the Court dismiss the Amended Complaint for lack of personal jurisdiction, dismiss each count for failure to state a claim, or in the alternative, transfer the action to the Eastern District of Virginia. On April 27, Crussiah filed an Opposition to Inova's Motion to Dismiss. He also submitted a Motion for Sanctions, which asked the Court to strike certain false statements from Inova's Motion to Dismiss and to prohibit Inova from submitting additional affidavits and declarations.[2] That same day, Crussiah also filed a Motion to Compel, seeking a Court order to require his insurer, MedStar, to provide him with medical treatment. On May 11, 2015, Inova submitted a Reply Memorandum to Crussiah's Opposition to Inova's Motion, as well as Memoranda in Opposition to the Motion for Sanctions and the Motion to Compel. On May 14, MedStar filed a Motion to Intervene, so it could respond to the Motion to Compel. Crussiah filed a Reply Memorandum to Inova's Opposition to the Motion for Sanctions on May 18, and on June 4, he filed a Response to MedStar's Motion to Intervene.

---

[1]   In Maryland, tortious interference with business expectancy is referred to as "tortious interference with prospective advantage." *See, e.g.*, *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013). The Court will use that terminology in discussing this claim.

[2]   Because the Motion presents arguments that respond to Inova's Motion to Dismiss, the Court construes Crussiah's Motion as a supplemental opposition to Inova's Motion to Dismiss. As discussed below in Part IV., to the extent Crussiah's Motion also requests that the Court strike portions of Inova's Motion and impose sanctions, it is denied.

**DISCUSSION**

## I.      Personal Jurisdiction

Inova has moved for dismissal of the Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Inova claims that it lacks sufficient contacts with Maryland to establish personal jurisdiction on any of the claims, on either a general jurisdiction or specific jurisdiction theory.  For the reasons set forth below, the Court finds personal jurisdiction over the claim of tortious interference with contract and prospective advantage and asserts pendent personal jurisdiction over the remaining claims.

### A.      Legal Standard

It is the plaintiff's burden to establish personal jurisdiction.  *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).  To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction.  *Id.*  In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor.  *Id.*  The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion.  *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763-64 (D. Md. 2009).

Inova, a nonprofit corporation established under the laws of Virginia, asserts that its contacts with Maryland are insufficient to allow this Court to exercise personal jurisdiction over it.  A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  Crussiah alleges that Inova

committed tortious acts in Virginia. The Maryland long-arm statute authorizes jurisdiction over a party who:

> [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. Code Ann., Cts. & Jud. Proceedings § 6-103(b)(4) (2015). Because courts have interpreted the Maryland long-arm statute to reach as far as the Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

Courts distinguish between two types of personal jurisdiction: general and specific. General, or all-purpose, jurisdiction offers a path to personal jurisdiction when the suit brings "causes of action arising from dealings entirely distinct from" the defendant's contacts with the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). Specific, or case-linked, jurisdiction provides authority "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Each type of jurisdiction is addressed in turn.

**B.      General Jurisdiction**

Corporations are subject to general jurisdiction in any state where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). A corporation's "place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760. It is the "exceptional case" when a court exercises general jurisdiction in a forum outside of those paradigm bases. *Id.* at 760 n.19. The

United States Supreme Court recently held that a district court in California did not have general jurisdiction over Mercedes-Benz USA, despite the fact that the company operated multiple facilities in the state and generated 2.4 percent of its parent corporation's worldwide sales there. *Id.* at 752, 761.

Although Inova has some contacts with Maryland, these contacts are not so continuous and systematic as to render it "at home" in that state. Inova is a nonprofit corporation organized under Virginia law that operates five hospitals, all in Virginia. Inova owns no real estate in Maryland. It receives less than .05 percent of its revenue from services provided in Maryland. Inova's contacts with Maryland consist of advertising to Maryland customers and providing some medical services in Maryland, including hosting mobile health clinics, providing blood to Maryland hospitals at their request, providing a specialized nurse to a Maryland hospital for a specific procedure several times per year, and employing a physician's group in Maryland. Its contacts with Maryland, though more than isolated, are markedly less extensive than Mercedes-Benz USA's contacts with California, which the Supreme Court found inadequate to support general jurisdiction. *Daimler AG*, 134 S. Ct. at 761-62. Thus, the Court does not have general jurisdiction over Inova.

## C. Specific Jurisdiction

The Court determines if it has specific jurisdiction over an entity by considering "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc.*, 293 F.3d at 712). The inquiry proceeds on a claim-by-claim basis because the court

must have jurisdiction over each claim it decides. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 & nn.5-6 (5th Cir. 2006); *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289-91 (1st Cir. 1999); *Gatekeeper Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 668 (E.D. Va. 2010).

The Supreme Court has provided guidance for the application of specific jurisdiction to cases in which defendants are sued for intentional torts perpetrated outside of, but with effects within, the forum state. In *Calder v. Jones*, 465 U.S. 783 (1984), a Florida journalist, relying on California sources, penned a defamatory article about a California actress for a publication that had its largest circulation in California. *Id.* at 785-86. Specific jurisdiction in California was appropriate because California was "the focal point both of the story and of the harm suffered." *Id.* at 789. Similarly, the United States Court of Appeals for the Fourth Circuit found specific jurisdiction over an out-of-state defendant who sent defamatory letters about a Virginia plaintiff to parties in Virginia. *First American First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1516-17 (4th Cir. 1986).

Under this precedent, the Court finds that it has personal jurisdiction over Inova regarding Crussiah's claim for tortious interference with contract and prospective advantage. Crussiah alleges that Inova, through its agents, contacted doctors in Maryland for the purpose of interfering with their contracts with Crussiah. As in *First American First*, Inova purposefully availed itself of the forum state, in this case Maryland, by directing negative information about a Maryland resident to parties inside Maryland, where the impact would be felt. *First American First, Inc.*, 802 F.3d at 1516-17. The tortious interference claim arises from those activities directed at Maryland, which was the focal point of Inova's alleged contact with doctors about Crussiah and was where Crussiah's contracts were breached and his harm suffered. *See Calder*,

465 U.S. at 789; *see also Vishay Intertech., Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1068-69 (4th Cir. 1982) (holding that an out-of-state defendant was subject to specific jurisdiction in North Carolina on a tortious interference with contract claim based on its written and telephonic communications with the in-state plaintiff).

Exercising personal jurisdiction over Inova in the forum to which it directed its tortious conduct is also reasonable and comports with fair play and substantial justice. On this prong, among the factors to consider are the burden on the defendant of litigating in the forum, the interest of the forum state in resolving the dispute, and the plaintiff's interest in convenient and effective relief. *See Consulting Eng'rs Corp.*, 561 F.3d at 279. The burden on Inova to litigate in a neighboring state is not onerous, and Crussiah's interest in convenient relief is countervailing. Maryland also has an interest in adjudicating a dispute that involves contracts between one of its residents and doctors who practice in the state. Inova thus does not "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

Inova's contacts with Maryland relating to Crussiah's other claims are, however, meager to non-existent. His false imprisonment and malicious prosecution claims involve interactions with the police at an Inova office in Virginia. His civil conspiracy claim is based on a "death panel" composed of Inova doctors who discussed Crussiah's treatment, which was provided in Virginia. The intentional infliction of emotional distress claim also stems from treatment provided in Virginia. Crussiah's defamation and fraud claims involve oral and written statements made in Virginia.

Crussiah does claim that Inova sent his medical records, which contained the allegedly defamatory statements, to Maryland Disability Determination Services, a Maryland state agency.

However, Inova did not initiate contact with Maryland Disability Determination Services. The agency requested Crussiah's records from Inova after Crussiah submitted an application for disability benefits. Inova did not target Maryland for its tortious conduct simply by responding to a request from a state agency. *See Calder*, 465 U.S. at 789 (finding specific jurisdiction based on contacts "expressly aimed" at the forum state); *cf. Zeneca Ltd. v. Mylan Pharm., Inc.*, 173 F.3d 829, 831-32 (Fed. Cir. 1999) (holding that defendant's petition to a federal agency located in Maryland did not subject the defendant to personal jurisdiction in Maryland). Excepting the actions that give rise to the tortious interference claim, Maryland was not the focal point of Inova's tortious conduct.

Inova's other contacts with Maryland—its advertising, provision of mobile medical services, and limited ownership interest in a medical practice—do not support jurisdiction because Crussiah's claims do not arise out of those contacts. *See Yates v. Motivation Indus. Equip. Ltd.*, No. 01–1938, 2002 WL 1343251, at *3-4 & n.6 (4th Cir. June 20, 2002) (holding that a crane manufacturer's advertising in, and the engagement of an authorized agent for, North Carolina did not provide specific jurisdiction over a tort arising from a crane accident in North Carolina, where there was no connection between the advertising or authorized agent and the acquisition of the crane involved in the accident). Crussiah does not claim that Inova sent him any solicitations or provided him with any medical services in Maryland. The only connection between Inova and Maryland on these remaining claims—that Crussiah is a resident of Maryland who experienced the effects of his treatment in Virginia once he was back at home in Maryland—is an insufficient basis for personal jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); *Harlow v.*

*Children's Hosp.*, 432 F.3d 50, 63-64 (1st Cir. 2005) (finding no specific jurisdiction in Maine over a Massachusetts hospital which treated a patient who resided in Maine); *Harrell v. Duke Univ. Health Sys., Inc.*, Civ. Action No. 7:07-813-HMH, 2008 WL 80122, at *3 (D.S.C. Jan. 7, 2008) (finding no specific jurisdiction in South Carolina over a North Carolina hospital which treated a patient who resided in South Carolina). The Court therefore lacks personal jurisdiction over the claims other than the tortious interference claim.

### D.     Pendent Personal Jurisdiction

Although the Court lacks personal jurisdiction over all but the tortious interference claim, when a court has personal jurisdiction over one claim in a multi-count suit, it may assert pendent personal jurisdiction over the remaining claims if they arise from a common nucleus of operative fact. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (authorizing personal jurisdiction over state claims related to a claim brought under a federal statute); *N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648, 656-57 (M.D.N.C. 2005) (stating that pendent personal jurisdiction may be exercised over state claims related to a state claim for which personal jurisdiction has been established); *Miller v. SMS Schloemann-Siemag, Inc.*, 203 F. Supp. 2d 633, 642-43 & n.7 (S.D. W.Va. 2002) (same); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7 (3d ed. 1998).

Crussiah's claims all arise from a common nucleus of operative fact: Inova's alleged efforts to prevent Crussiah from bringing a malpractice claim. Considering these related claims together will promote judicial economy. The Court will therefore exercise pendent personal jurisdiction over all of the claims in this case.

**II.     Motion to Dismiss for Failure to State a Claim**

Inova seeks dismissal of each count of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), on the grounds that Crussiah has failed to state a claim upon which relief can be granted.   These claims include Fraud (Count 1), Defamation (Counts 2, 3, 6, and 7), Malicious Prosecution (Count 4), False Arrest (Count 5), Tortious Interference With Contract and Prospective Advantage (Counts 8 and 9), Civil Conspiracy (Counts 10 and 11), and Intentional Infliction of Emotional Distress (Counts 12 and 13).

**A.     Legal Standards**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Crussiah has pleaded most of his claims under both Maryland and Virginia law.  For each claim, the Court must determine which state's law to apply.  A federal court sitting in diversity must apply the choice-of-law rules from the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Consequently, this Court looks to Maryland law to determine what law governs state common law claims.  For torts, Maryland applies the law of the state

"where the injury—the last event required to constitute the tort—occurred." *Lab. Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006).

**B.    Count 1:  Fraud**

Crussiah alleges that Kulkarni and other Inova employees, at the direction of Dr. Cochran, committed fraud by altering Crussiah's medical records in numerous ways to conceal Inova's misconduct and to avoid compensating Crussiah for that misconduct.  Specifically, Crussiah claims that, on March 26, 2013, Kulkarni deleted the record of her order for the MRI that injured Crussiah.

When pursuing a claim for fraud in federal court, the plaintiff must plead "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (2d ed. 1990)).

"When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."  Restatement (First) of Conflict of Laws § 377 n.4 (American Law Inst. 1934); *see also Lab. Corp. of America*, 911 A.2d at 845 (noting that Maryland courts follow the principles stated in the Restatement (First) of Conflict of Laws). Inova altered Crussiah's medical records in Virginia.  Crussiah does not indicate the harm he suffered from Inova's fraudulent acts.  Because the last step in the tort for which Crussiah has identified a location occurred in Virginia, the Court will apply Virginia law.

Under Virginia law, the elements of fraud are "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party

misled, and (6) resulting damage." *Thompson v. Bacon*, 425 S.E.2d 512, 514 (Va. 1993). The plaintiff must show that he, and not some other party, relied upon the defendant's fraudulent statement. *See id.*; *Sewraz v. Nguyen*, No. 3:08cv90, 2011 WL 201487, at *9 (E.D. Va. Jan. 20, 2011) (finding no fraud claim where the plaintiff alleged that the defendant made a misrepresentation to the Virginia State Bar, but not that the plaintiff relied on that misrepresentation); *RBA Capital, LP v. Anonick*, No. 3:08cv494, 2009 WL 960090, at *4 (E.D. Va. Apr. 8, 2009) ("[U]nder Virginia law, only the party who actually relied on the alleged misrepresentation can maintain an action for actual fraud.").

Here, although Crussiah claims that Inova made false statements in his medical records to avoid malpractice liability, he does not allege that he relied upon those false statements or how such reliance harmed him. Under his account, the key fact that was fraudulently omitted, that he had undergone an MRI at Kulkarni's request, was fully known to him as the patient. Because Crussiah has not and cannot allege one of the elements of fraud, this claim is dismissed.[3]

### C.    Counts 2, 3, 6, and 7:  Defamation

Crussiah claims that Inova inserted two defamatory statements into his medical records. First, an Inova physician knowingly recorded a false diagnosis for "Autonomic Dysfunction." Crussiah believes that "physicians and others such as prospective employers" who see this diagnosis will think him physically weak. Am. Compl. ¶ 114. The second defamatory statement occurs on the first page of his medical records and describes Inova's reasons for dismissing Crussiah as a patient. Crussiah fears that this statement may lead doctors to provide inadequate care. Outside of Inova's employees, Crussiah identifies only one entity that has seen these

---

[3]    The result would be the same under Maryland law. *See Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49-51 (Md. 2013) (holding that a plaintiff who did not personally rely on the defendant's false statements cannot state a claim for fraud).

statements: Maryland Disability Determination Services, a state agency which received Crussiah's medical records from Inova after he applied for disability benefits.

As discussed above, Maryland applies the law of the state in which the harm caused by a tort occurs. *Lab Corp. of America*, 911 A.2d at 845. Applying Maryland's choice-of-law rules, the Fourth Circuit has stated that in defamation actions, "the place of the harm has traditionally been considered to be the place where the defamatory statement was published, *i.e.*, seen or heard by non-parties." *Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999) (citing Restatement (First) of Conflict of Laws § 377 n.5 (American Law Inst. 1934) ("[W]here harm is done to the reputation of a person, the place of wrong is where the defamatory statement is communicated.")). Crussiah claims that Inova published its defamatory statements by sending them to Maryland Disability Determination Services. He postulates that future physicians and employers might see these statements, but does not claim that any have encountered them to date. Maryland, therefore, is the forum in which the harm occurred.

To state a claim for defamation under Maryland law, a plaintiff must allege "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (internal quotation marks omitted). A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule, which, as a consequence, discourages others in the community from having a good opinion of, or associating with, that person." *Id.* (internal quotation marks omitted). The statute of limitations for defamation claims is one year. Md. Code Ann., Cts. & Jud. Proc. § 5–105. It begins to run on the day the plaintiff discovered the defamatory statement,

or the day he reasonably should have known of the defamatory statement. *Sears, Roebuck & Co. v. Ulman*, 412 A.2d 1240, 1242-44 (Md. 1980).

Crussiah alleges that Inova doctors placed false statements in his medical records with the aim of harming his credibility. Crussiah came into possession of these records on December 17, 2013, more than one year before he filed his Complaint on December 24, 2014. He learned about the defamatory statement on the first page of his records the same day he received his records because an Inova receptionist read part of the statement to him. Although Crussiah does not offer the exact date of his discovery in the medical records of the false diagnosis for Autonomic Dysfunction, his Amended Complaint indicates that he reviewed his records in Inova's office on the day he received them. Having been read part of one statement that Crussiah considered defamatory, and having had the opportunity to review the records that day, Crussiah reasonably should have discovered any other defamatory statements at that time, particularly given that he had previously been told of the Autonomic Dysfunction diagnosis by Kulkarni during a September 13, 2013 office visit.

Crussiah argues that his defamation claims should not be dismissed on statute of limitations grounds because the records Inova sent to Maryland Disability Determination Services on November 19, 2014 contained new evidence of Inova's wrongdoing. This evidence, however, related to the claim that Kulkarni had deleted the MRI order and thus does not pertain to Crussiah's defamation claims. Crussiah also contends that medical records are in a state of "eternal publication." Mot. for Sanctions at 6. The relevant date for statute of limitations purposes, however, is not the date on which Inova published the statements, but the date on which Crussiah discovered or should have discovered those statements. Because more than a

year elapsed after that date and before Crussiah filed his Complaint, the defamation claims are dismissed.[4]

### D.     Counts 4 and 5: False Imprisonment and Malicious Prosecution

Crussiah alleges that Inova engaged in false imprisonment and malicious prosecution by summoning the police to its office when Crussiah came to pick up his medical records on December 17, 2013. The police remained in the office while Crussiah received and reviewed his medical records. Crussiah speculates that Inova hoped the police presence would intimidate him and that Inova convinced the police to come to its office by informing them that Crussiah might become violent.

Because all of the events related to these claims, including any injury that Crussiah might have suffered, occurred in Virginia, the law of Virginia applies. *See Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000) ("[W]hen a person sustains bodily harm, the place of wrong is the place where the harmful force takes effect upon the body.") (quoting Restatement (First) of Conflict of Laws § 377 n.1 (American Law Inst. 1934)).

False imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *W.T. Grant Co. v. Owens*, 141 S.E. 860, 865 (Va. 1928). It can be accomplished through either force or threat. *Id.* The allegations in the Amended Complaint itself, however, reveal that neither Inova nor the police ever impinged upon Crussiah's liberty. No one physically restrained Crussiah. No one threatened him by word or gesture. Although the presence of police may have made Crussiah uncomfortable, it did not prevent him from obtaining his medical records and remaining on-site long enough to review them. When Crussiah asked an officer if he could leave, the officer answered in the affirmative.

---

[4]   Because Virginia also has a one-year statute of limitations for defamation claims, Va. Code Ann. § 8.01-247.1, the outcome would be the same if Virginia law applied.

Crussiah even notes that Inova, having called the police, nevertheless presumed that Crussiah would simply take his records and leave. One officer actually told Crussiah, "You got your records, then leave." Am. Compl. ¶ 127. Because Crussiah has not alleged facts sufficient to establish a plausible claim for false imprisonment, that claim is dismissed.

To state a claim for malicious prosecution, the plaintiff must show that "the prosecution was (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998). This cause of action is premised on the existence of an actual prosecution. Crussiah has not alleged any facts to show that Inova or the police actually filed charges against him. This claim is therefore also dismissed.

### E. Counts 8 and 9: Tortious Interference with Contract and Prospective Advantage

Crussiah claims that Inova feared that its former patient would sue it for malpractice connected to the February 15, 2013 MRI. To bring such a claim, Crussiah would need a medical expert to verify his accusations. Crussiah therefore alleges that Inova sought to prevent any physician that Crussiah contacted from disclosing Inova's misdeeds. According to Crussiah, Inova's campaign was effective in that it induced four Maryland doctors and Kulkarni to breach their contracts with Crussiah and blocked Crussiah from receiving treatment from two other providers in Maryland.

Of the seven contracts and potential contracts that form the basis of this claim, six were to be performed in Maryland. Whether Inova caused Crussiah bodily harm by causing the denial of adequate medical care, or economic harm by preventing him from recovering money damages through a malpractice suit, the bulk of that harm occurred in Maryland. Maryland law thus applies.

Tortious interference with contract has five elements: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991). Similarly, tortious interference with prospective advantage is established by "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause; and (4) actual damage and resulting loss." *Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984) (quoting *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)). This tort requires the plaintiff to "identify a possible future relationship which is likely to occur, absent the [defendant's] interference, with specificity." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp.2d 535, 546 (D. Md. 2006)). "A broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved." *Nat. Design, Inc.*, 485 A.2d at 674.

Crussiah alleges that he had contracts with five doctors: Kulkarni, Rao, Dormu, Dhar, and Oke. He claims that Inova knew of these contracts and caused each doctor to breach his or her contractual obligation to provide adequate care. Crussiah claims to have suffered damages by receiving inadequate treatment for his medical conditions and by losing the ability to pursue his medical malpractice case, since no medical professional would attest to Inova's malfeasance.

Inova claims that Crussiah fails to allege that Inova ever communicated with any of Crussiah's healthcare providers. Crussiah does not claim to have specific knowledge of actual communications between Inova and Crussiah's physicians. He does, however, provide facts to support his inference that such communications took place, including (1) Inova's motive to block

his malpractice claim; (2) Inova's placement of false statements in his medical records; (3) the inadequate care and suspicious behavior of Rao, Dormu, Dhar, and Oke; (4) the apparent refusal of Horizon Vascular to provide treatment; and (5) his pastor's refusal to recommend a cardiologist. Inova does not argue that Crussiah's inference is unreasonable. It only faults him for not offering the details of conversations that necessarily would have occurred in secret. At the motion to dismiss stage, however, it is not necessary for the plaintiff to have knowledge of, and to allege, direct evidence on each element. Because Crussiah has alleged sufficient facts to support a plausible inference of tortious interference, the claim has been sufficiently pleaded.

Finally, Inova also argues that Crussiah has failed to state a claim for tortious interference with Crussiah's relationship with Kulkarni because Crussiah's contract for medical services by Kulkarni was with Inova, and Inova cannot interfere with a contract to which it is a party. *See Travelers Indem. Co. v. Merling*, 605 A.2d 83, 89-90 (Md. 1992). Crussiah responds that he had no contract with Inova and that his contract was with Kulkarni. Because the plaintiff's allegations must be accepted as true for purposes of a motion to dismiss, the Court will not resolve this factual dispute at the Rule 12(b)(6) stage. The motion to dismiss the claim of tortious interference is denied.

### F.  Counts 10 and 11:  Civil Conspiracy

At some point during Crussiah's time as a patient with Inova, Inova convened a group of its doctors, and potentially one of its attorneys, in what Crussiah calls a "death panel." Crussiah claims that this panel engaged in a civil conspiracy to cause Crussiah physical harm, but he provides no details about its methods or any injury it caused. Because Crussiah appears to allege that the "death panel" met in Virginia, but otherwise provides no specific information about the

actions taken by the panel or their effect on Crussiah, the Court finds that the alleged harm occurred in Virginia and will apply Virginia law.

Civil conspiracy "consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means," where their efforts cause damage to the plaintiff. C*ommercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995).[5]

Crussiah fails to identify what Inova's "death panel" agreed to accomplish or how it sought to accomplish it. Crussiah's barebones allegation that the "death panel" met and aimed to harm him does not provide sufficient facts to state a plausible claim for relief. The civil conspiracy claim is dismissed.

### G.     Counts 12 and 13:  Intentional Infliction of Emotional Distress

Crussiah's final claim is that Inova is liable for intentional infliction of emotional distress because (1) it attempted to provoke a mental illness in Crussiah; and (2) it attempted to discredit Crussiah by falsely portraying him as suffering from a mental illness. Crussiah does not explain how Inova pursued the former strategy, but he asserts that Inova failed to cause him to develop a mental illness. On the latter theory, Crussiah claims that Dr. Kulkarni selectively recommended some psychological tests and did not order others, which created a misleading picture of his mental health.

The Amended Complaint does not make clear the exact conduct or injury that forms the basis for this claim. The core of the claim seems to be medical care provided by Inova in Virginia. Lacking any more specific claims tying this cause of action to Maryland, the Court will apply Virginia law.

---

[5]   Maryland courts apply a similar definition. *Green v. Washington Suburban Sanitary Comm'n* 269 A.2d 815, 824 (Md. 1970).

A plaintiff alleging intentional infliction of emotional distress must prove that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe." *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007). An act perpetrated with tortious and even criminal intent does not necessarily qualify as "outrageous." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). Instead, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (American Law Inst. 1965)). In addition, to trigger liability, the distress caused must be "so severe that no reasonable person could be expected to endure it." *Id.* at 163. The fact that a defendant's actions upset a plaintiff to such a degree that psychological counseling is necessary is not sufficient to establish severe distress. *Compare Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006) (holding that "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling" did not amount to severe distress) *with Almy*, 639 S.E.2d at 188 (distinguishing *Harris* and finding severe emotional distress because the plaintiff not only sought counseling but also alleged that "the defendants' actions rendered her functionally incapable of carrying out any of her work or family responsibilities").

Under some circumstances, a doctor's abuse of a patient's confidence with the aim of harming the patient and insulating the doctor's employer from a medical malpractice action might qualify as sufficiently outrageous conduct to support a claim for intentional infliction of emotional distress. In this case, however, Crussiah's allegations are insufficient. He claims that Inova attempted to cause him to develop a mental illness, but he does not identify any steps that

Inova took in pursuit of this goal. The assertion that Kulkarni recommended some psychological tests and failed to recommend others might amount to deficient medical care, but it falls far short of the high bar for outrageous conduct. Even upon consideration of the conduct Crussiah attributes to Inova in relation to his other causes of action, such as defamatory statements and interference with contractual relations, such conduct does not "go beyond all possible bounds of decency" as to be "utterly intolerable in a civilized community." *Russo*, 400 S.E.2d at 162.

Moreover, Crussiah does not claim to have suffered severe distress, instead asserting that he does not believe Inova caused him to develop a psychiatric condition. He does not claim to have sought treatment for such a condition, and does not assert any functional incapacity or unendurable emotional condition stemming from Inova's actions. Because Crussiah has not alleged conduct or emotional distress severe enough to meet the legal standard, his intentional infliction of emotional distress claim is dismissed.

## III. Motion to Transfer

Inova also moves, in the event that the case is not dismissed, for the Court to transfer this case to the United States District Court for the Eastern District of Virginia. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

This case could have been brought in the Eastern District of Virginia because Inova, a Virginia nonprofit corporation, is a resident of that district for purposes of venue. 28 U.S.C. § 1391(b)(1), (c)(2); *see also D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009). In assessing a motion to transfer, the Court also considers "(1) the weight accorded to the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties,

and (4) the interest of justice." *D2L Ltd.*, 671 F. Supp. 2d at 777. "Ordinarily, a plaintiff's choice of forum is entitled to substantial weight." *Id.* at 778 (quoting *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)). That weight is lessened if the chosen forum (1) is not where the plaintiff resides or (2) has little or no connection to the events giving rise to the case. *Id.* at 779.

Crussiah's choice of forum is entitled to substantial weight. He resides in Maryland, and his tortious interference claim, the only remaining claim in the case, has a clear connection to this state. Although the Eastern District of Virginia may be a more convenient forum for many of Inova's witnesses and Inova itself, Crussiah and several of the potential witnesses for the tortious interference claim live or work in Maryland. The Court also takes judicial notice of the fact that Alexandria, Virginia and Greenbelt, Maryland, the locations of the courthouses for the Eastern District of Virginia, Alexandria Division, and the District of Maryland, Southern Division, respectively, are less than 30 miles apart. Convenience is therefore not a compelling reason for transfer. Inova has not offered any persuasive evidence to show that the interests of justice are advanced by a transfer. In the absence of any persuasive reason to overcome the substantial weight afforded to Crussiah's choice of forum, the Court denies the motion to transfer.

## IV.     Motion for Sanctions

Crussiah requests that the Court strike portions of the Memorandum in Support of Inova's Motion to Dismiss that refer to an affidavit from Inova's Deputy General Counsel attached to Inova's Motion. Crussiah claims that the affidavit contains falsehoods and omissions intended to mislead the Court. He also asks that the Court sanction Inova by prohibiting it from filing additional declarations and affidavits.

Motions to strike apply to pleadings. Fed. R. Civ. P. 12(f). Motions to dismiss, their supporting memoranda, and affidavits are not pleadings. *See* Fed. R. Civ. P. 7(a). Therefore, a motion to strike is not an appropriate means to attack statements in these filings. *See Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 458 (D. Md. 1999). Moreover, a Motion to Strike applies only to "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although Crussiah disputes some or all of the facts contained in the affidavit, the Court does not find any of the assertions to meet this standard, nor does it have a basis at this stage of the case to conclude that any are false. Thus, there is no basis to strike the affidavit.

As for sanctions, Crussiah has failed to show that Inova's filings were presented for an improper purpose or that its factual contentions lack evidentiary support, as would be required to support the imposition of sanctions. *See* Fed. R. Civ. P. 11(b), (c). Crussiah's Motion for Sanctions is denied.

## V.     Motion to Compel and Motion to Intervene

Crussiah has filed a Motion to Compel under Federal Rule of Civil Procedure 37 in which he seeks a court order requiring his insurer, MedStar, to provide him with medical care. Rule 37 authorizes a court to order the production of information validly requested in discovery or required to be disclosed under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 37(a). Because Crussiah's Motion does not seek disclosure of any information to which he is entitled, and in any event is premature because discovery in this case has not commenced, there is no basis to grant the Motion.

Even if the Court were to construe this Motion as a Motion for a Preliminary Injunction under Rule 65, there would be no basis to grant it. Because MedStar is not a party to this case;

an officer, agent, servant, employee or attorney of a party; and not in active concert or participation with a party or its agents, the Court cannot issue an injunction ordering MedStar to provide medical care to Crussiah.  *See* Fed. R. Civ. P. 65(d)(2).  Even if the Court could issue such an injunction, because Crussiah acknowledges that his request "is not filed as an emergency," Mot. to Compel at 2, there is no basis to grant an injunction at this early stage of the case.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (holding that a plaintiff seeking a preliminary injunction must show that "he is likely to suffer irreparable harm in the absence of preliminary relief").  The Motion to Compel is therefore denied.

Because MedStar sought intervention only to oppose Crussiah's Motion to Compel, MedStar's Motion to Intervene is denied as moot.

## CONCLUSION

For the reasons stated above, Inova's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  The Court grants the Motion as to Crussiah's fraud, defamation, false imprisonment, malicious prosecution, civil conspiracy, and intentional infliction of emotional distress claims (Counts 1-7 and 10-13) and DISMISSES those counts.  The court denies the Motion as to Crussiah's tortious interference claims (Counts 8 and 9).  Crussiah's Motion for Sanctions is DENIED.  Crussiah's Motion to Compel is DENIED.  MedStar's Motion to Intervene is DENIED AS MOOT.  Crussiah is permitted to file a Motion for Leave to Amend his complaint as to the fraud and civil conspiracy claims only.  A separate Order follows.


Date:  November 19, 2015                         _____/s/_____
                                                 THEODORE D. CHUANG
                                                 United States District Judge